## Case No. 23-4153

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————

SIMON & SIMON, PC d/b/a CITY SMILES and VIP DENTAL SPAS,
individually and on behalf of others similarly situated,
*Plaintiffs and Respondents,*

v.

ALIGN TECHNOLOGY, INC.,
*Defendant and Petitioner.*

_____

*On Appeal from an Order of the United States District Court for the Northern District of California
(San Francisco), Case No. 3:20-CV-03754-VC · Honorable Vince Chhabria*

## OPPOSITION TO PETITION FOR PERMISSION TO APPEAL
### [Pursuant to Fed. R. Civ. P. 23(f)]

Joshua P. Davis
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: 415-689-9292
jdavis@bm.net

Eric L. Cramer
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:  215-875-3000
ecramer@bm.net
mkane@bm.net

*Additional Counsel on next page.*

January 3, 2024

Daniel J. Walker
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Ave, NW
Suite 300
Washington, DC 20006
Telephone: 202-559-9745
dwalker@bm.net
hbrinn@bm.net

John Radice
April Lambert
Daniel Rubenstein
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, NJ 08540
Telephone: 646-245-8502
jradice@radicelawfirm.com
alambert@radicelawfirm.com
drubenstein@radicelawfirm.com

Joseph R.Saveri
Kevin E. Rayhill
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: 415-500-6800
jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com

Kevin Landau
**TAUS CEBULASH & LANDAU, LLP**
123 William Street, Suite 1900A
New York, NY 10038
Telephone: 212-931-0704
klandau@tcllaw.com

Daniel J. Mogin
Timothy Z. LaComb
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-687-6611
dmogin@moginrubin.com
tlacomb@moginrubin.com

*Attorneys for Respondents-Plaintiffs and the Certified Class*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    THE CLASS'S ANTITRUST CLAIMS .............................................5

    A.    Refusal to Deal—Termination of Interoperability ................6

    B.    Exclusionary Contracts ........................................................7

III.   THE PROCEEDINGS BELOW .........................................................9

    A.    Dr. Singer's Combined Model ..............................................9

    B.    Dr. Singer's TOI-Only Model ............................................11

    C.    Align Abandoned Its Economists in Its Brief Opposing Class Certification ..........................................................................11

    D.    Align Made a New Argument at the Class Certification Hearing ......12

    E.    The District Court's Findings ..............................................12

IV.   THE DISTRICT COURT'S ORDER IS NOT MANIFESTLY ERRONEOUS ......................................................................................13

    A.    Align's Factual Errors ........................................................14

        i.    Misinterpretation of the Combined Model ...............15

        ii.   Misinterpretation of the TOI-Only Model ...............17

    B.    Align's Legal Errors ..........................................................20

        i.    Align's Misinterpretation of *Comcast* .....................20

        ii.   Align's Misinterpretation of *PeaceHealth*, *Allied*, and *Omega*21

        iii.  Align's Legal Arguments Are Irrelevant ..................24

V.    Align Cannot Satisfy Any Other Standard under Rule 23(f) ........24

    A.    Certification Is Not Questionable and It Will Not Ring a "Death Knell" ................................................................................25

    B.    The Order Does Not Raise Certification Issues that Are Unsettled or Fundamental ......................................................................25

VI.   CONCLUSION................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010).............................................. 4, 8, 21, 23, 24

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985) ............................................................ 14

*Andrews v. Plains All Am. Pipeline, L.P.*,
    777 F. App'x 889 (9th Cir. 2019) ...................................... 13

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985) .............................................................. 7

*Bazemore v. Friday*,
    478 U.S. 385 (1986) ............................................................ 20

*Bigelow v. RKO Radio Pictures*,
    327 U.S. 251 (1946) ............................................................ 14

*Brooke Grp. Ltd. v. Brown Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ............................................................ 23

*Cascade Health Sols. v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008)........................................... 4, 22

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005)............................................. 14

*Church & Dwight Co. v. Mayer Lab's, Inc.*,
    2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ..................... 23

*City of Anaheim v. S. Cal. Edison Co.*,
    955 F.2d 1373 (9th Cir. 1992).......................................... 5, 22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..................................... 3, 4, 14, 20, 21

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962) ....................................................... 4, 5, 22

*Earl v. Boeing Co.*,
    21 F. 4th 895 (5th Cir. 2021) ............................................ 13

*Eastman Kodak v. So. Photo Materials Co.*,
    273 U.S. 359 (1927) ............................................................ 15

*Eastman Kodak Co. v. Image Techn. Servs., Inc.*,
  504 U.S. 451 (1992) ........................................................................ 7

*EEOC v. Gen. Tel. Co. of Nw., Inc.*,
  885 F.2d 575 (9th Cir. 1989)........................................................ 19

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020)........................................................ 23

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
  44 F.4th 959 (10th Cir. 2022) ...................................................... 23

*In re Live Concert Antitrust Litig.*,
  863 F. Supp. 2d 966 (C.D. Cal. 2012) ......................................... 20

*In re Suboxone Antitrust Litig.*,
  967 F.3d 264 (3d Cir. 2020)......................................................... 14

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
  451 U.S. 557 (1981) ...................................................................... 15

*Le v. Zuffa, LLC*,
  216 F. Supp. 3d 1154 (D. Nev. 2016)........................................... 23

*Luke v. Family Care and Urgent Med. Clinics*,
  323 F. App'x 496 (9th Cir. 2009) ................................................. 16

*Lytle v. Nutramax Labs., Inc.*,
  2022 WL 1600047 (C.D. Cal. 2022)........................................ 16, 17

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  350 F. App'x 95 (9th Cir. 2009) ................................................... 23

*McClure v. Thompson*,
  323 F.3d 1233 (9th Cir. 2003)...................................................... 14

*Olean Wholesale Grocery Coop., Inc. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ...................................................... 9, 13

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997)..................................................... 4, 23

*Oregon Nat. Res. Council v. Marsh*,
  52 F.3d 1485 (9th Cir. 1995)........................................................ 14

*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) ........................................ 16

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ...................................................................... 13

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ............................................................... 15

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................... 16

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
    676 F.2d 1291 (9th Cir. 1982) ......................................... 5, 22

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ............................................. 21

## Rules

Fed. R. Civ. P. 23(f) ............................................... 1, 7, 17, 24

Fed. R. App. P. 32(a)(5) and (6) ........................................ 28

Fed.R.App.P. 32(f) ........................................................ 28

## Other Authorities

*Tying, Bundled Discounts, and the Death of the Single Monopoly Profit Theory*,
    123 Harv. L. Rev. 397 (2009) ............................................. 8

## I.  INTRODUCTION

Align's Rule 23(f) Petition ("Pet.") seeks interlocutory appellate review of the district court's Order ("Order") certifying a direct purchaser class (the "Class") based primarily on manifest error. Pet., Dkt. 1.1 at 13-23. But it is the Petition that contains factual and legal errors, not the Order.

The Class challenges Align's anticompetitive scheme (the "Scheme"). It has two components:

(1) The "Refusal to Deal"—Align's refusal to deal with its competitor, 3Shape; and

(2) The "Exclusionary Contracts"—contracts containing bundling and exclusive dealing provisions.

Align's Petition is based on two claims: the Class is unable to disaggregate the damages from the components of Align's anticompetitive Scheme; and certification is inappropriate unless the Class can disaggregate damages. The first claim is factually incorrect, and the second claim is legally incorrect.

*Align's Factual Errors*. Align takes the *factual* position that Dr. Hal Singer, the Class's expert economist, is unable to disaggregate the Refusal to Deal damages from the Exclusionary Contracts damages. Pet. 19-23. That is untrue.

Dr. Singer constructed two multivariate regression models that can calculate the effects of Align's conduct on its prices, the "Combined Model" and the

1

"Refusal-to-Deal Model." Those models can disaggregate the effects of the components of Align's Scheme in two ways. First, Dr. Singer can use the Combined Model on its own to determine the damages from Align's Scheme as a whole, from only the Refusal to Deal, or from only the Exclusionary Contracts.

Second, Dr. Singer can use the Refusal-to-Deal Model to determine the damages from the Refusal to Deal. Subtracting those damages from the damages from the Scheme as a whole—calculated using the Combined Model—yields the damages from the Exclusionary Contracts.

*Method One: The Combined Model.* Dr. Singer testified during a rigorous two-day evidentiary hearing on class certification about his methods for calculating the damages that Class members suffered from Align artificially inflating its prices. Based on Dr. Singer's expert reports and his testimony, the district court found that Dr. Singer's Combined Model enables him to calculate the Class damages from the Scheme as a whole, any of its components separately, or any combination of its components. *See, e.g.*, Order, 1-ER-7, n.3 (Dr. "Singer has the combined model that enables him to 'turn off' the exclusionary agreements and measure TOI alone, thus controlling for any impact of the exclusionary agreements."); *see also id.* at 10; Expert Report of Hal J. Singer Ph.D. ("Singer 1"), 1-SE-090–00 ¶¶177–201, 1-SE-112–13 ¶¶231–32 & Table 24 (explaining that

2

Combined Model on its own can disaggregate damages); Transcript of Evidentiary Hearing Proceedings ("Hearing") (Nov. 13-14, 2023), 1-ER-95:9–96:10 (same).

*Method Two: The Refusal-to-Deal Model and the Combined Model*. Dr. Singer's Refusal-to-Deal Model isolates the effects of Align's Refusal to Deal on its prices. That regression showed that Align's Refusal to Deal inflated Align's prices by slightly over $250 million through March 2022. Singer 1, 1-SE-113 ¶232 & Table 24. The Combined Model demonstrated that the Scheme as a whole—Align's Refusal to Deal *plus* its Exclusionary Contracts—inflated those same prices by slightly over $350 million. *Id*. It follows that Align's Exclusionary Contracts inflated the prices the Class paid to Align through March 2022 by approximately $100 million.

Align's Petition is dependent on its incorrect claim that Plaintiffs cannot disaggregate damages. That is reason enough to deny it.

*Align's Legal Errors*. Align's Petition is also premised on legal errors. Align claims Plaintiffs have a burden at class certification to show that they can disaggregate damages between the Refusal to Deal and the Exclusionary Contracts. That position misinterprets both class certification and antitrust doctrine.

*Comcast*. Align claims *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) renders class certification inappropriate here because Dr. Singer cannot disaggregate damages. In *Comcast*, the district court certified a class even though it

3

had permitted only one of four liability theories to proceed on a class basis, and the plaintiffs could not isolate damages from that one viable theory. *Comcast Corp. v. Behrend*, 569 U.S. 27, 36-38 (2013). The Supreme Court reversed based on the unremarkable proposition that a class can recover only those damages caused by conduct it is permitted to challenge. *Id.*

Align is wrong about *Comcast* for two reasons. First, the district court ruled that the Class may challenge all components of Align's Scheme, Order, 1-ER-6–7, and, second, as discussed above, Dr. Singer's models can disaggregate damages if the need arises.

*A Scheme Versus Standalone Conduct*. Align argues that certification was improper because the Class cannot recover based on Align's Exclusionary Contracts, and that the Class cannot calculate the damages only from its Refusal to Deal. It bases its argument on the standard this Court adopted for assessing bundling and exclusive dealing as *standalone claims*, not as part of an anticompetitive scheme. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ("*PeaceHealth*"); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) ("Allied"); *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997) ("Omega").

But an anticompetitive scheme by a defendant with monopoly power should be assessed as a whole, not based on its individual components. *Cont'l Ore Co. v.*

4

*Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962); *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992); *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1302 (9th Cir. 1982). As a result, the Class may recover the incremental damages Align's Exclusive Contracts caused as part of its Scheme, even if it could not challenge those contracts on their own. In any case, the Class can separate its Exclusive Contracts damages from its Refusal to Deal Damages.

## II. THE CLASS'S ANTITRUST CLAIMS

The Class members are dental practices that purchased clear aligners ("Aligners") directly from the defendant, Align. Aligners are used in corrective dental interventions, including to straighten teeth. Align's brand of Aligners is Invisalign.

Dental practices often use intraoral scanners ("Scanners") to order Aligners. Scanners have a wand that dentists insert in patients' mouths to obtain the information to manufacture Aligners. Align's Scanners are called iTero. One of Align's competitors, 3Shape, sells Scanners under the brand TRIOS. Many dentists believe that 3Shape's TRIOS is superior to iTero.

Align has monopoly power in the Aligner market. That power derived in part from its patents. While that patent protection remained in place, Align entered

5

into an interoperability agreement with 3Shape ("Interoperability"). It enabled dental practices to use a TRIOS to order Invisalign.

Align agreed to Interoperability to increase sales of Invisalign. Without Interoperability, dental practices would be able to use TRIOS Scanners to sell only Aligners made by Align's rivals. Align profited on sales of Invisalign from Interoperability.

Align's incentives changed, however, as crucial Invisalign patents were set to expire in late 2017. TRIOS Scanners could order Aligners as easily from Align's rivals as from Align. On Align's iTero, in contrast, ordering Invisalign is easy, but ordering rival Aligners is slow and cumbersome. Upon the expiration of Align's key patents, TRIOS Scanners would thus pose a threat to Align's dominance in the Aligner market.

## A.    Refusal to Deal—Termination of Interoperability

Faced with this imminent threat of competition, Align demanded that 3Shape agree to exclusivity provisions that would prevent dentists from using a TRIOS to order non-Invisalign Aligners. 3Shape refused. Align then terminated Interoperability.

Align anticipated that its termination of Interoperability ("TOI") would cost it short-term profits. And it did. Align lost over $110 million of revenues in

6

Aligner sales in the short term. Expert Rebuttal Report of Hal J. Singer Ph.D. ("Singer 2"), 1-SE-254–61 ¶¶199–215.

But Align expected to benefit in the long-term from the exclusion of Aligner competition. TOI coerced dental practices to buy Align's iTero rather than 3Shape's TRIOS Scanners. Dental practices needed access to Align's Invisalign given its dominant market share. Align thus used TOI to extend its power from the Aligner market to the Scanner market. In turn, the difficulty of ordering non-Invisalign Aligners on an iTero meant that TOI shored up Align's monopoly power in the Aligner market as well. The result was that TOI artificially inflated Align's prices on Invisalign by $250 million through March 2022. Singer 1, 1-SE-113 ¶232 & Table 24.

For purposes of this Rule 23(f) Petition, Align does not contest that the above conduct suffices as common evidence that Align engaged in an unlawful refusal to deal under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985), *Eastman Kodak Co. v. Image Techn. Servs., Inc*. 504 U.S. 451 (1992), and other binding precedents.

## B. Exclusionary Contracts

The other component of Align's Scheme involved Exclusionary Contracts. They contained two kinds of anticompetitive provisions: bundling and exclusive dealing. Align bundled by imposing penalties on dentists if they bought an iTero

7

but not Invisalign or vice-versa. It engaged in exclusive dealing by imposing penalties if dentists bought more than a small percentage of their Aligners from Align's rivals. The Exclusionary Contracts artificially inflated Align's Invisalign prices by an additional $100 million through March 2022. Singer 1, 1-SE-113 ¶232 & Table 24.

Align pretends that its penalties are "discounts." It claims to discount its prices for loyal customers. But the economic literature recognizes that if so-called "discounts" exclude competition and thereby inflate prices, then the prices with the "discounts" are not really discounted at all, and the prices without the discounts really include penalties. *See, e.g.*, Einer Elhauge, *Tying, Bundled Discounts, and the Death of the Single Monopoly Profit Theory*, 123 HARV. L. REV. 397, 402-03 (2009). Dr. Singer has shown that Align's Exclusionary Contracts excluded competition and inflated Invisalign prices. Singer 1, 1-SE-113 ¶232 & Table 24. Align does not offer discounts for loyalty but rather imposes penalties for disloyalty.

Align nonetheless asserts that: (1) its anticompetitive bundling that is part of the overarching Scheme is *per se* lawful under *PeaceHealth*—which created a standard for *standalone* bundling claims—and (2) its anticompetitive exclusive contracts are presumptively lawful under *Allied* and *Omega*—which identified factors for assessing *standalone* exclusive dealing claims.

8

## III.   THE PROCEEDINGS BELOW

*The Expert Reports*. Dr. Singer presented his expert opinions through two reports spanning almost three hundred pages. They contained extensive citations to record evidence and the economic literature, as well as detailed explanations of his econometric models. Dr. Singer constructed two econometric models to calculate the damages from Align's Scheme and its components, the Combined Model and the Refusal-to-Deal Model. It is common for economists to use multiple statistical methods to support their findings about injury and damages. *See Olean Wholesale Grocery Coop., Inc. Bumble Bee Foods LLC*, 31 F.4th 651, 670-73 (9th Cir. 2022) (*en banc*) (approving plaintiffs' economist's use of multiple statistical analyses of injury and damages to support class certification—the same ones Dr. Singer used here).

### A.   Dr. Singer's Combined Model

Dr. Singer's Combined Model involves two steps:

(1) Step one ("Step One") is a regression analysis that shows the share of the Aligner market that each component of Align's Scheme excluded from competition. Singer 1, 1-SE-072–80 ¶¶141–60. That is what Dr. Singer labeled Align's "Exclusionary Share." *Id.*

(2) Step two ("Step Two") is a regression analysis that determines the effects of changes in Align's Exclusionary Share on its prices. Singer 1, 1-SE-

9

090–101 ¶¶175–203, 1-SE-112–14 ¶¶228–35. This regression controls for many economic factors, other than the Scheme, that could have affected Invisalign prices. *Id.*

Calculating the damages from a component of Align's Scheme using the Combined Model is straightforward. Step One determines what Align's Exclusivity Share "would have been but-for each element" of the Scheme. Singer 1, 1-SE-090 ¶177. The difference between Align's Exclusivity Share with an element of the Scheme, and without it, reveals the change in Exclusionary Share the element caused. Step Two then detects the incremental effects of changes in Align's Exclusionary Share on Invisalign prices. As the district court found, Dr. Singer is thus able to calculate the damages the Class suffered from each component of Align's Scheme. Order, 1-ER-7, n.3, 10; *see also* Singer 1, 1-SE-090–100 ¶¶177–201, 1-SE-112 ¶¶231–32, & Table 24; Hearing, 1-ER-95:9–96:10.

Align retained two economists to critique Dr. Singer's analysis. One of them, Dr. Lauren Stiroh, focused on class certification. The other, Dr. Edward Snyder, focused on the merits. Neither one challenged Dr. Singer's explanation that he can use the Combined Model to disaggregate the effects of the components of Align's Scheme on its Exclusivity Share.

10

### B.     Dr. Singer's TOI-Only Model

Dr. Singer also described in detail his Refusal-to-Deal (or "TOI-Only") Model. That model uses a regression analysis to calculate the effects of only TOI on Invisalign prices, controlling for many other economic factors that could affect Invisalign prices. Order, 1-ER-10; Singer 1, 1-SE-090–100 at ¶¶177–201, 1-SE-112–13 ¶¶231–32, & Table 24; Hearing, 1-ER-29:25–30:3, 35:7–12. This model provides a second method for Dr. Singer to disaggregate damages. It shows the damages from TOI alone were about $250 million through March 2022. The Combined Model shows the damages from the Scheme as a whole were about $350 million through March 2022. Thus, the damages from only the Exclusionary Contracts were about $100 million. Singer 1, 1-SE-113 ¶232 & Table 24. Neither of Align's economists contested that the TOI-Only Model reflects the damages from only TOI.

### C.     Align Abandoned Its Economists in Its Brief Opposing Class Certification

In opposing class certification, Align abandoned its class expert, Dr. Stiroh, failing to cite her report at all in the argument section of its brief. Align also in effect abandoned its merits expert, Dr. Snyder, citing his report in its argument section for only two trivial points. Align thus has no evidentiary basis, and certainly no expert opinion, for its mistaken assertion that Dr. Singer's models cannot disaggregate the damages from the components of Align's Scheme.

11

### D.    Align Made a New Argument at the Class Certification Hearing

The district court conducted a rigorous two-day evidentiary hearing with live expert testimony to scrutinize class certification. At that hearing, Dr. Singer explained that his Combined Model can disaggregate damages. Hearing, 1-ER-95:9–96:10.

At the oral argument at the close of the evidentiary hearing, Align shifted strategies yet again. It speculated for the first time that Dr. Singer's TOI-Only Model might be unsound because it allegedly did not control for the effects of Align's Exclusionary Contracts on its Invisalign prices. Hearing, 2-ER-279:18–280:17. Align's economists never raised this issue. Nor did they make any effort to show that controlling for Align's Exclusionary Contracts would have changed the results of Dr. Singer's TOI-Only Model. Align based its untimely (and incorrect) argument on attorney speculation.

### E.    The District Court's Findings

After the district presided over the evidentiary hearing and assessed Dr. Singer's credibility, it made various relevant findings. One of them is that the issues Align raised regarding liability and damages are common to the Class. Order, 1-ER-6. Another is that the Class may prevail on Align's liability for its Exclusionary Contracts as part of its Scheme if Plaintiffs establish that those contracts had anticompetitive effects. *Id*. A third is that Dr. Singer's TOI-Only

12

Model can calculate damages based only on Align's Refusal to Deal if the judge or jury were to determine that Align's Exclusionary Contracts did not cause anticompetitive effects. *Id*. at 5. A fourth is that Dr. Singer's Combined Model can calculate damages stemming only from Align's Refusal to Deal. *Id*. at 7 & n.3.

## IV. THE DISTRICT COURT'S ORDER IS NOT MANIFESTLY ERRONEOUS

Certification of a class is mandatory if Plaintiffs satisfy the requirements of Rule 23(a) and Rule 23(b)(3). *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*. 559 U.S. 393, 398-400 (2010). Align's Petition does not contest that Plaintiffs satisfy Rule 23(a). Nor does it challenge that Plaintiffs have presented a common method for proving classwide impact. That generally satisfies Rule 23(b)(3) by establishing that common issues predominate over individual issues and that proceeding on a class basis would be superior to individual litigation. *Olean Wholesale Grocery Coop., Inc. Bumble Bee Foods LLC*, 31 F.4th 651, 676 (9th Cir. 2022) (*en banc*). Instead, Align's only argument for interlocutory review is that Plaintiffs cannot disaggregate damages and that they must show they can do so. Pet. 13-23. Both claims are wrong.[1]

---

[1] None of the cases Align cites support its Petition. Pet. 2-3. The plaintiffs in *Andrews v. Plains All Am. Pipeline, L.P*., 777 F. App'x 889 (9th Cir. 2019) (Pet. 2), failed to present a model capable of proving causation and classwide injury, *id*. at 892-93, whereas the district court found Dr. Singer's models can show both, Order, 1-ER-8, and Align's Petition does not challenge that finding. The same is true for *Earl v. Boeing Co*., 21 F. 4th 895, 898-99 (5th Cir. 2021) (Pet. 2-3), in which the plaintiffs failed to show classwide injury, which Align did not contest below and does not contest in its Petition. Similarly, the defendant claimed in *Owens v. FirstEnergy Corp*.,

13

### A.     Align's Factual Errors

Align argues that the district court manifestly erred in its finding that common issues predominate because the district court and Dr. Singer allegedly "both recognized that Dr. Singer's models do not disaggregate damages among types of conduct but rather 'combine' all conduct." Pet. 19. The factual premise of Align's argument is wrong. Dr. Singer testified that his models *can* disaggregate damages, Hearing, 1-ER-29:25–30:3, 35:7–12, 95:9–96:10, and the district court so found. Order, 1-ER-7 & n.3, 10.

If Align had not mischaracterized the district court's finding on disaggregation of damages, it would have faced a formidable burden. First, Align would have to show that the district court was not only wrong, but manifestly so. *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 959 (9th Cir. 2005).[2] Further, a long line of precedent would require Align to establish that plaintiffs cannot make a reasonable estimate in disaggregating damages. *See Comcast*, 569 U.S. at 35 (in

---

23-0303, Dkt. 1-2 (6th Cir. April 14, 2023 , 2023), (Pet. 2), that the plaintiffs promised they could develop a damages model but did not present one. *Id.* at *4-5. *See Owens v. FirstEnergy Corp.*, 2:20-cv-04287 (6th Cir. Nov. 16, 2023) (granting permission to appeal without explanation). *In re Suboxone Antitrust Litig*., 967 F.3d 264 (3d Cir. 2020) (Pet. 3), *affirmed* class certification even though the plaintiffs there offered a model only for aggregate damages, not for classwide injury, *id*. at 272-73, whereas Dr. Singer presented models for both.

[2] A district court abuses its discretion regarding its findings of fact only if no evidence supports its decision. *Oregon Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995). That standard of review warrants particular deference to the district when it involves an assessment of the credibility of a witness's testimony, *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985); *McClure v. Thompson*, 323 F.3d 1233, 1240-41 (9th Cir. 2003), and Dr. Singer's credibility is at issue here.

antitrust case damages "[c]alculations need not be exact"); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) (same); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (same); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 565 (1931) (same); *Eastman Kodak v. So. Photo Materials Co.*, 273 U.S. 359, 377-79 (1927) (same). Align makes no effort to meet these exacting standards, choosing instead to distort Dr. Singer's expert opinion and the district court's findings.

### i.    Misinterpretation of the Combined Model

The district court found that Dr. Singer's Combined Model can separate the damages caused by Align's TOI from the damages caused by its Exclusionary Contracts. Order, 1-ER-7 & n.3, 10. It found that Dr. "Singer explained that his combined model can be used to assess just the effects of termination of interoperability, controlling for the exclusionary agreements." *Id.* at 10. All the evidence in the record supports that finding, including Dr. Singer's expert reports, Singer 1, 1-SE-090–100 ¶¶177–201, 1-SE-112–13 ¶¶231–32 & Table 24, and his testimony at the two-day evidentiary hearing. Hearing, 1-ER-95:9–96:10. Align cites no evidence to rebut that testimony, and its experts never opined on this issue.

Nor does Align explain why it believes Dr. Singer's Combined Model cannot do what Dr. Singer testified and the district court found it can do. According to Dr. Singer's reports and testimony, Step One of his Combined Model

measures the effect of each component of Align's Scheme on its Exclusivity Share. *See supra* III.A. Step Two then calculates the price inflation associated with a change in Exclusivity Share from Step One. *Id*. The Combined Model thus can calculate the damages from each component of Align's Scheme. *Id*.

Align nevertheless asserts that the district court and Dr. Singer acknowledged "that Dr. Singer's models simply do not, at this point, distinguish among types of conduct." Pet. 21. That is untrue. As explained above, the TOI-Only Model measures damages only from TOI, and the Combined Model can calculate damages from any component of the Scheme or from the Scheme as a whole.

Nor do any of the cases Align cites support its position. Most of them involve efforts to submit new expert reports after the disclosure deadline. *Id*. (citing *Luke v. Family Care and Urgent Med. Clinics*, 323 F. App'x 496, 498-500 (9th Cir. 2009); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010); *Townsend v. Monster Beverage Corp*., 303 F. Supp. 3d 1010, 1028 (C.D. Cal. 2018)). Here, Dr. Singer's disclosure of his Combined Model was timely, as the district court recognized, and it is Align that attempts to present a belated (and incorrect and unsupported) statistical analysis through lawyer argument.

The one other case that Align cites on this issue also does not support its position. In *Lytle v. Nutramax Labs., Inc*., No. 22-80047 (9th Cir. May 20, 2022)

16

(Mot. 22), the district court granted class certification based on a *proposed* damages model that the expert had not yet developed but claimed he could, *Lytle v. Nutramax Labs., Inc*., 2022 WL 1600047, at *17-18 (C.D. Cal. 2022), and this Court granted the Rule 23(f) Petition. Here, in contrast, Dr. Singer presented a complete model. He has done the very work that the defendant in *Lytle* claims the plaintiffs there did not do.

Align's economists had a full and fair opportunity to test the Combined Model and to argue that it cannot reliably disaggregate damages. They did not do so, likely because they understood that the Combined Model works as Dr. Singer explained and the district court found it does. Align's lawyers' arguments about the alleged limitations of Dr. Singer's Combined Model lack any evidentiary support. They cannot establish that the district court's finding that the Combined Model can disaggregate damages was wrong, much less that it was manifestly wrong.

### ii. Misinterpretation of the TOI-Only Model

The district court also found that Dr. Singer's TOI-Only Model can isolate the damages caused by Align's TOI if the jury finds that Align's Exclusionary Contracts did not cause any anticompetitive harm. Order, 1-ER-10 ("if the jury disagrees with Singer's conclusion that the exclusionary agreement had anticompetitive effect, then the TOI-only model remains a reliable way of measuring the effects of the termination of interoperability alone"). All the record

evidence supports that finding too, including Dr. Singer's expert reports, Singer 1, 1-SE-090–100 at ¶¶177–201, 1-SE-112–13 ¶¶231–32 & Table 24, and his testimony. Hearing 1-ER-29:25–30:3, 35:7–12. Align cites no evidence to rebut that testimony. Its economists never opined in support of Align's position.

Align nevertheless now argues that Dr. Singer's TOI-Only Model may include some damages from its Exclusionary Contracts because, it asserts, he did not properly control for that possibility. Pet. 22-23. That position makes no sense. Dr. Singer's Combined Model establishes that Align's Scheme—including TOI and the Exclusionary Contracts—caused $350 million in overcharges on Invisalign through March 2022. *See supra* III.B. His TOI-Only Model establishes damages from TOI alone during the same period of $250 million. *Id*. That means the TOI-Only Model excludes $100 million in overcharges that are properly attributed to the Exclusionary Contracts. *Id*.

Align misconstrues this evidence, asserting that "the TOI model has at least $100 million in damages for which Dr. Singer has not controlled." Pet. 22. It would be hard to frame a less coherent claim. It is not true that the TOI model "has" the relevant "$100 million" damages (whatever that means). *Id*. Rather the TOI-Only Model *excludes* the $100 million attributable to the Exclusionary Contracts. The $100 million is literally the difference between the damages from the TOI-Only Model—which do not include harm from Align's Exclusionary

Contracts—and the full damages from the Combined Model—which do. Align's reasoning is thus backwards.

In short, Dr. Singer shows that the Scheme caused a total of $350 million in Invisalign overcharges through March 2022, broken down between $250 million attributable to TOI and $100 million to the Exclusionary Contracts. Singer 1, 1-SE-113 ¶232 & Table 24.

Align has presented no evidence to the contrary. It cited at the oral argument to only two paragraphs from Dr. Snyder's report that it claimed support its position, paragraphs 224 and 226. Hearing, 2-ER-280:3–14. However, neither one does. Paragraph 224 discusses the separate issue of whether Align would have given its sham "discounts" in the absence of the Scheme. Snyder Report, 2-SE-404 ¶224. Paragraph 226 addresses the Combined Model, not the TOI-Only Model. *Id*. at ¶226. So Align's argument lacks *any* evidentiary support.

Align attempts to buttress its position with inapposite citations. *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 885 F.2d 575 (9th Cir. 1989) (Pet. 23), held that a defendant must "do more than simply point out possible flaws" in a regression model. *Id*. at 582. Rather the defendant must *show* that if the allegedly missing

variables had been included, the results would have been different. *Id*. at 583.[3]

Align has made no effort to satisfy that standard.

In any case, Align has waived its challenge to the TOI-Only Model. It did not raise the argument in its opposition brief, asserting it for the first time at the oral argument on class certification. Hearing, 2-ER-279:18–280:17.

## B. Align's Legal Errors

Not only is each of Align's two factual errors fatal to its Petition, but so too is each of its two legal errors.

### i. Align's Misinterpretation of *Comcast*

*Comcast* does not require disaggregation of damages here. In *Comcast*, the Supreme Court reversed class certification because (1) the plaintiffs' methodology for calculating damages could not disaggregate the effects of their four theories about how the defendants' allegedly anticompetitive conduct distorted the market *and* (2) the district court had permitted the plaintiffs to proceed with only one of those four theories on a class basis. *Comcast*, 569 U.S. at 36-38. The Court further noted, "This methodology might have been sound, and might have produced

---

[3] *See also Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (per curiam) (Brennan, J. concurring in part) (Pet. 23) (criticism of regression for omitting variables—which Align claims—should generally be addressed through cross-examination, not exclusion of expert opinion); *In re Live Concert Antitrust Litig*., 863 F. Supp. 2d 966, 976 (C.D. Cal. 2012) (Pet. 23) (citing *Bazemore* and excluding yardstick model only because defendant's economist *demonstrated* failure to consider variable rendered it unreliable).

commonality of damages, if all four of those alleged distortions remained in the case." *Id.* at 37.

Here, the district court has permitted the Class to proceed based not only on Align's Refusal to Deal, but also on its Exclusionary Contracts. Indeed, it described Align's defense of its Exclusionary Contracts as "dubious." Order, 1-ER-7. And it found that common issues would predominate—and class certification would be appropriate—even if Plaintiffs could not disaggregate damages. *Id*. at 7, n.3. Align provides no basis to conclude that the finding of predominance was an abuse of the district court's discretion.[4]

### ii. Align's Misinterpretation of *PeaceHealth*, *Allied*, and *Omega*

Align's bundling and exclusive dealing contracts combine with its Refusal to Deal to form its monopolistic Scheme. Dr. Singer, relying on the economic literature, explained how such a scheme can foreclose rivals from such a substantial share of the market that it would enable a firm with monopoly power to maintain its market share and inflate its prices. Singer 1, 1-SE-073–080 ¶¶146–60; Singer 2, 1-SE-205–15 ¶¶73–92. His Combined Model *shows* empirically that Align's Scheme did, in fact, enable it to maintain its monopoly power and charge

---

[4] Align implies that *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150,1154 (9th Cir. 2016) (Pet. 14) supports its misinterpretation of *Comcast*. But *Vaquero* held that *Comcast* did not disturb the Ninth Circuit rule that individual damages issues cannot defeat class certification. *Id*. at 1154-55. That *confirms* certification is appropriate here.

inflated prices. Singer 1, 1-SE-113 ¶232 & Table 24. And, as discussed above, the Combined Model can show the price effects from the components of the Scheme separately or together.

Align nevertheless argues that the district court's certification order violated *Comcast* because the Class seeks to recover the incremental damages caused by Align's bundling and exclusive dealing. Pet. 13-19. Align claims that the Class cannot recover such damages unless Align's Exclusionary Contracts would be unlawful if assessed on their own. *Id*.

Align's argument is contrary to binding law. Under Supreme Court and Ninth Circuit precedent, the Class may recover based on any incremental anticompetitive effects from Align's bundling and exclusive dealing as part of its Scheme, even if they would be lawful if Align undertook them in isolation. *Continental Ore*, 370 U.S. at 698-99; *City of Anaheim*, 955 F.2d at 1376; *Twin City*, 676 F.2d at 1302.

Align argues that its bundling must violate the test in *PeaceHealth* to give rise to recoverable damages as part of the Scheme. That is wrong. *PeaceHealth* addressed only whether bundling *on its own* is "legal," 515 F.3d at 906, not

22

whether it can be *anticompetitive* and cause damages as part of a monopolistic scheme.[5]

Additionally, Align incorrectly argues that, under *Allied* and *Omega*, the Class cannot recover overcharges caused by Align's exclusive dealing provisions unless they were contained in contracts of long duration. But those cases held only that duration is *relevant* to the legality of exclusive dealing; duration is not dispositive of legality, much less of whether exclusive dealing can cause incremental anticompetitive harm. *Allied*, 592 F.3d at 997; *Omega*, 127 F.3d at 1163-64.[6]

---

[5] *PeaceHealth* also welcomed "academic inquiry into the competitive effects of bundled discounts," which was "just beginning" in 2008 when the case was decided. *Id.* at 908. *See also Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168–69 (D. Nev. 2016) (whether exclusive dealing is illegal, standing alone, is irrelevant if part of larger scheme) (citing cases); *Church & Dwight Co. v. Mayer Lab's, Inc.*, 2011 WL 1225912, at *15-16 (N.D. Cal. Apr. 1, 2011) (same).

　　Neither *Brooke Grp. Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993) (Pet. 15) nor *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001 (9th Cir. 2020) (Pet. 15) supports Align's Petition. Both addressed allegations of predatory pricing—which deflates prices below competitive levels, *Brooke Group*, 509 U.S. at 217; *Qualcomm*, 969 F.3d at 1001—not bundling that inflates prices, including through disloyalty penalties.

　　Nor does *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 350 F. App'x 95, 97 (9th Cir. 2009) (Pet. 16) support Align's Petition. *Masimo* held that bundling *may be unlawful* if it excludes competition, even if it does not meet the *PeaceHealth* standard. *Id*. at 97. This Court ruled against the plaintiff there only because it had failed to show substantial foreclosure, *id*., a showing that Dr. Singer has made here, Singer 1, 1-SE-072–80 ¶¶141-60; Singer 2, 1-SE-205–22 ¶¶71–112, and that the Petition does not challenge.

[6] *See also Church & Dwight*, 2011 WL 1225912, at *6 ("There is no hard-and-fast rule for determining the point at which market foreclosure becomes 'substantial,'" and foreclosure "depends on many factors," only one of which is contract duration) (quotation marks omitted) (citing cases); *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 44 F.4th 959, 988 (10th Cir. 2022) (Pet. 17) (noting short duration and easy termination weigh against illegality of exclusive dealing provisions).

23

Align also mischaracterizes Dr. Singer's testimony, claiming he *assumed* Align's exclusive dealing was anticompetitive. Pet. 18. To the contrary, he used a regression analysis to *test empirically* whether it foreclosed competition and inflated Align's prices, and he found, based on statistically and economically significant results, that it did. Hearing, 1-ER-89:23–90:3, 92:23–93:13.

### iii. Align's Legal Arguments Are Irrelevant

Even if Align were right about *Comcast*, *PeaceHealth*, *Allied*, and *Omega*, its Petition should still be denied. That is because its legal arguments all depend on its untrue assertion that Dr. Singer and the district court acknowledged that Dr. Singer cannot disaggregate damages. Pet. 21. As discussed above, Dr. Singer testified and the district court found that Dr. Singer *can* disaggregate the effects of Align's TOI from the effects of its Exclusionary Contracts. *See supra* IV.A. So Align's legal arguments are not only incorrect, but also irrelevant.

## V. Align Cannot Satisfy Any Other Standard Under Rule 23(f)

In addition to Align's dominant argument that the district court's Order is manifestly erroneous, Pet. 13-23, Align briefly suggests two other potential bases for interlocutory review under Rule 23(f). Pet. 11, 23. It cannot satisfy either one of them.

24

### A.  Certification Is Not Questionable and It Will Not Ring a "Death Knell"

Align claims that interlocutory review is appropriate because the certification Order is questionable, and it will ring the proverbial "death knell" for this litigation. Pet. at 11. Align must show both. Neither is true. First, as explained above, the Order was sound; it is Align's criticisms that are questionable.

Second, Align has already demonstrated its willingness to try this case on a class basis. Trial is scheduled for less than five months from the filing of this brief. The parties will already have persisted to the eve of trial by the time this Court is expected to decide whether to grant Align's Petition. Assuming the litigation has not been resolved by then—and there is no indication it will be—Align appears perfectly willing to persist through trial and, if necessary, to raise its (meritless) challenges to class certification after a final judgment. Indeed, at this point in the litigation, the most efficient way to proceed would be for this Court to address all appellate issues together after trial rather than to grant Align's Petition and have multiple appeals pending at the same time.

### B.  The Order Does Not Raise Certification Issues That Are Unsettled or Fundamental

Align also claims that the Order involves unsettled and fundamental issues about the standard for class certification. It does not. Instead, Align seeks to disrupt settled law. Further, an interlocutory appeal would waste this Court's time as both of Align's legal arguments lack any evidentiary basis and it waived one of them.

25

## VI.   CONCLUSION

For the foregoing reasons, this Court should deny Align's Petition.

January 3, 2024                              Respectfully submitted,

*/s/ Joshua P. Davis*
Joshua P. Davis
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, 94111
Telephone: 415-689-9292
jdavis@bm.net

Eric L. Cramer
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215-875-4604
ecramer@bm.net
mkane@bm.net

Daniel J. Walker
Hope Brinn
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: 202-559-9745
dwalker@bm.net
hbrinn@bm.net

26

John Radice
April Lambert
Daniel Rubenstein
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, NJ 08540
Telephone: 646-245-8502
jradice@radicelawfirm.com
alambert@radicelawfirm.com
drubenstein@radicelawfirm.com

Joseph R. Saveri
Kevin E. Rayhill
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: 415-500-6800
jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com

Daniel J. Mogin
Timothy Z. LaComb
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-687-6611
dmogin@moginrubin.com
tlacomb@moginrubin.com

Kevin Landau
**TAUS, CEBULASH & LANDAU, LLP**
123 William St, Suite 1900A
New York, NY 10038
Telephone: 212-931-0704
klandau@tcllaw.com

*Attorneys for Respondents-Plaintiffs and
the Certified Class*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s):** 23-4153

I am the attorney or self-represented party.

**9th Cir. Case Number(s):** 23-4153

**This brief contains 5,137 words,** excluding the items exempted by Fed. R.

App. P. 32(f) in compliance with Civ. R. 5.  The brief's type size and typeface

comply with Fed. R. App. P. 32(a)(5) and (6) because this brief has been prepared

in a proportionally spaced typeface using Microsoft Word for Office 365 and is 14-

point font, Times New Roman

I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: January 3, 2024

_/s/ Joshua P. Davis_
Joshua P. Davis
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, 94111
Telephone: 415-689-9292
jdavis@bm.net

28

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FORM 15. CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

**9th Cir. Case Number(s):** 23-4153

    I hereby certify that I electronically filed the foregoing OPPOSITION TO PETITION FOR PERMISSION TO APPEAL on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Dated: January 3, 2024

                                  */s/ Joshua P. Davis*
                                    Joshua P. Davis
                                    **BERGER MONTAGUE PC**
                                    505 Montgomery Street, Suite 625
                                    San Francisco, 94111
                                    Telephone: 415-689-9292
                                    jdavis@bm.net